Good morning, and if it pleases the Court, George Beeler, appearing for the appellant Alan Boren. Let me first say, Your Honors, that Mr. Boren wishes to withdraw any request for a limited remand under Ameling. In fact, based upon comments that the District Court has made as recently as a few weeks ago in a motion for bail pending appeal, I don't think we could say that there's any reasonable probability that the District Court would give a lesser sentence or a lower sentence if he were able to exercise the discretion that he would now have in light of Booker. So we're asking... I understand that. In fact, I thought you might be withdrawing that. Okay. We are. So what we would like the Court to do, however, is address the four issues we have raised with respect to several of the enhancements that the District Court did make. And I wanted to limit my comments this morning. I think we've covered our position well in the briefs. But I did want to emphasize one point under the issue relating to the upward departure. Now, a portion, one of the circumstances or a couple of the circumstances the District Court relied upon has to do with what he viewed as the unusually callous and extreme nature of the fraudulent conduct. And I think it's sufficient simply to add there and to ask the Court to look at the cases the government cites, which I think when you compare the circumstances in those cases, the five or six cases the government cites, to support the notion that the conduct here was so extreme as to warrant an upward departure, nothing that is in this case is really comparable to the extreme sort of circumstances you see in those cases. And our basic point simply was before the District Court and remains that fraud is always callous. It's always harmful emotionally and psychologically to the victims of fraud. And those kinds of harms have been taken into account by the Sentencing Commission when they have based the guideline score primarily upon the amount of the loss. And there is nothing in this case that sets Mr. Bourne's conduct apart from that type of callousness and cruelty and disregard for others, which is inherent and which is part of the heartland of fraud offenses. Can we back up? Should we be reviewing this under a reasonableness standard in light of Booker? No, I don't believe so, Your Honor. Well, you would say that we should be reviewing this under the prior pre-Booker standard? Yes. It's our position, Mr. Bourne had a plea agreement. And the plea agreement contemplated several concessions that were made to him in terms of the guidelines. The two main ones were the agreement that the three indictments would be consolidated for sentencing, which had certain definite benefits for him in terms of the guidelines. The second one was that he would be able to select which of the books would be applicable for the determination of the sentencing scores. Now, those were two significant agreements, parts of the agreement, that he bargained for and that he relied upon. And he was clearly banking on a guideline sentence when he entered into that agreement. What version of the guidelines did we apply? The 1997 version is the one that was applied in the district court based upon Mr. ---- Yes, Your Honor. Okay. Except as to the tax fraud. You used the 1995 guidelines on the tax fraud. I think you're correct, Your Honor. I've overlooked that since that didn't actually end up having a practical effect upon the guideline score and the sentence. We have two sets of guidelines to look to. If it's correct, and I really don't recall that the 1995 guideline was used for the ---- and I don't think it would have made any difference whether it was the 1995 or the 1997 guideline that was used for that one count. But when the case is remanded, it will be our position in the district court that by virtue of the plea agreement, he is entitled to a pre-booker guideline sentence. That's what was contemplated by the parties. It's what he bargained for. He loses the benefits of his plea agreement if he goes back and now there is simply an advisory guidelines and the court can exercise its discretion. There's no benefit to him of having had the concession from the government that he can select which of the applicable guideline books would be used.  But we still have to go to the district court because you're seeking a sentence within the range, not a precise number of months, correct? Correct. Well, we're seeking a sentence under the guidelines with certain corrections that we're asking this court to make. But the judgment of the district court as to where in the range he comes down is still open to the district court. Yes, yes. Under the guidelines. Right. What the appropriate range is, is what we are concerned about. And we're concerned about the fact that the four-point upward departure he made is not supported by the case law. And the main point I wanted to make on the upward departure is that several of the circumstances that the district court relied upon, number one, that it was a multi-year crime spree. Number two, that he showed contempt for the criminal justice system. And number three, that there was harm to the casinos that was not counted in the bank fraud charges. Those are three factors that there's no support in the law for him to rely upon. I mean, certainly the fact that the crimes went over multiple years, that's a very common factor in fraud offenses. And there's nothing about that fact that should warrant an upward departure. Nor does the fact that he showed contempt for the criminal justice system. That obviously is inherent in anybody that commits a fraud offense. And the court also noted that some of his offenses were committed at a time when he knew he was under investigation. But again, there's nothing in the guidelines, nor is there anything in logic, that would support giving a higher sentence to somebody who's foolish enough to commit his crime when he knows someone's investigating him than someone who is smart enough to commit his crime in a secret way where no one's investigating him and he doesn't believe anything's coming to light. You're still talking then about the 97 guidelines and not the 03 amendments, right? Correct. And most important under the 97 guidelines is that under this court's decision in United States v. Lawton, under the 97 guideline, the court cannot depart upward where there's been a plea bargain for conduct that was not charged in the indictment. And the district court cited three separate circumstances. The harm to the casinos, and we contend there was no harm to the casinos, but even if there was, the harm to the casinos was not charged in any of the three indictments. So that's uncharged conduct. The district court also cited an incident involving the Tiberis. Well, didn't pre-Booker, didn't the Supreme Court rule that you could include uncharged conduct in calculating under the sentencing guidelines? Yes, and in 2000, the Sentencing Commission amended the guidelines to change the rule under the 97 guidelines under this circuit's law to say that whether or not there was a plea bargain, the court could upward depart in an appropriate circumstance based on uncharged conduct. But under the 1997 guidelines, under which Mr. Bourne was being sentenced, the law in this circuit under United States v. Lawton in several cases, it came before it. I think you're right. I think that's right, because I think the Supreme Court decision was 1998. No. It was after. I actually don't recall the Supreme Court decision, but I do know that in effective in 2000, the guidelines were amended to basically overrule Lawton. And there were two other circumstances cited by the district court, which the government brings to light in its brief, and one was an incident where there was some evidence that on some earlier occasion, Mr. Bourne and his girlfriend had committed a currency violation when coming into the country, and then there was some evidence somewhere in the record of an incident where $30,000 over and above the charged frauds was stolen from the Tiberis, his in-laws. And that had to do with $100 bills that he took and allegedly didn't return. And I say somewhere in the record because neither of those incidents was actually the subject of any evidence during the course of the sentencing proceeding, as was the case with the alleged harm to the casinos. So we have at least three instances where the court, in making the upward departure, purports to rely upon conduct that under United States v. Lawton, the court could not rely on for purposes of an upward departure. So that alone is sufficient to require a remand based upon the inappropriateness of the four-point upward departure. All right. Thank you, counsel. Thank you. Good morning, Your Honor. Stephen Cazares of the United States, and may it please the Court. The government's position is that this case should be returned to the district court on a limited remand under Ameline. The government believes that the district court laid out an extensive sentencing record here. If he waives and you don't, what do we do? Well, you didn't make that argument, really, did you? He made the argument that there should be a limited remand under, well, I don't know which case it was at the time. The Sixth Amendment had been violated, and I think it was Blakely, whatever. And I think the first Ameline case. And you opposed it. You said in your brief, no, don't remand or don't, you know, do anything under Blaker. We just want you to defer until the final Booker decision comes out. So you really didn't make that argument. I don't see how you can oppose it now. That is true, Your Honor. The government's position is, however, that this case is appropriate for a limited remand under Ameline. That may be, but you didn't make that argument. So you waived it. So what's your next argument? Well, I'll get straight to the substantive claims, Your Honor. Okay. With respect to the four-level upward departure, first of all, the defendant did not raise the objection under the 2003 amendments to Section 5K2.0 at the district court level. Therefore, the upward departure should be analyzed under a plain error standard. And the government's position is that the district court did not plainly err in applying the four-level upward departure under Section 5K2.0. Well, is the 2003 amendment substantive? The government's position is that it is substantive and not retroactive. And the government did argue that in its briefs, that these are not clarifying amendments that would be retroactive. So the government does take that position. But, again, with respect to the actual factors used by the district court, the government believes that they were authorized under the 97 edition of the guidelines that were used in this case to calculate the defendant's sentence. And I will actually get to, first of all, with respect to the crime spree factor, the defense has made arguments in its briefs that this is somehow an end-around upward departure based on criminal history. The district court specifically rejected the government's request for an upward departure based on criminal history. Instead, the district court made a quantitative and really a qualitative assessment of the defendant's conduct over really the six-year period that the defendant committed the offenses here, charged in the 27 counts contained in these three separate indictments. And with respect to really what we've called the crime spree factor, the way this case was sentenced, many of the harms that the defendant caused throughout this time period weren't reflected in the ultimate guidelines calculation. And the reason is because under the Ortlin decision, as was required, this case was originally calculated under two guideline manuals. Well, actually three. The 95 for the tax count, the 97 book for the securities fraud obstruction case and for the bank fraud case, and the 2001 book for the investor fraud money laundering case. The defendant's guidelines were calculated. Now, under agreement between the parties, after over a year of sentencing hearings, the defendant ultimately requested that the bulk of the charges be sentenced under the 97 book. However, the groupings were not reshuffled and regrouped under one book as would be appropriate. Instead, the sentences remained in the original groupings that were put together under the two books, which essentially resulted in the defendant avoiding the vulnerable victim enhancement for Ms. Chalky that should have been capped on top of the bank fraud securities fraud calculation, a multiple victim two-level adjustment that also should have been capped on top of the bank fraud securities fraud calculation, as well as a multiple count adjustment. And this is because the mail fraud, wire fraud charges in the third indictment would have, should have been grouped with the securities fraud and the bank fraud charges. Therefore, based on that alone, that's four levels that the defendant avoided based on the way this case was sentenced. And this is an argument that the government did make at the district court level in requesting the upward departure. So that's just one factor. With respect to the extreme conduct under Section 5K2.8 and the 1997 guidelines, that is an appropriate factor for upward departure, as well as the comments under Section 2F1.1. These are unaccounted for harms. And I'll get straight to the victim that I think the district court was most concerned with, and that was Ms. Chalky. The defense suggests that in some way the defendant's treatment of Ms. Chalky wasn't similar to the case law cited by the government. And the government disagrees. Ms. Chalky was a widow. The defendant knew that. Ms. Chalky's son was defendant's employee. The defendant knew that. During the time period of the defendant's conduct in defrauding of Ms. Chalky, the defendant took the $100,000, refused to return the money, even after, incredibly, Ms. Chalky's son fell into a coma during this time period. The defendant knew of this fact and refused to return the money. That's extreme. What is the government's position on the standard of review? Is it pre-Booker or post-Booker? The government does believe that at this time, at this level, it is pre-Booker. Okay. So you agree on that? Yes, Your Honor. It would have helped if both parties had filed 28J letters or something about Booker and their positions before coming into court today. I apologize for that shortcoming, Your Honor. Continuing with respect to the extreme conduct factor, there is the treatment of Ms. Chalky that has been addressed in the government's briefs. In addition, for example, the defendant's treatment of his in-laws, his relatives, the Tiberis, the grandparents of his children, as well as the defendant's treatment of the Wallachs, who were the grandparents of the defendant's co-conspirator on the investor fraud case, Ms. Tewitt. The treatment of these victims, for example, there was no vulnerable victim enhancement here that was granted, applied for the treatment of Ms. Chalky. So this is another example of the fact that the defendant's real treatment of these victims wasn't reflected in this guideline's calculation. And finally, the third factor, really, that was relied upon by the district court in the upward departure was the treatment or the loss caused or the unaccounted for harms to the casino. The defendant alleges that under Lawton this was uncharged and this was inappropriate. That's not true. The indictment specifically indicated that the defendant's conduct was for the purpose of causing the casinos to negotiate to reduce down the defendant's gambling losses. So it was charged. Now, the casino wasn't, I guess, a legal victim of the charge because the charges were bank fraud and 1014 false statements. But the indictment made clear, and the defendant had noticed, that the casinos were a victim of the crime. So it was charged in the indictment. Can I ask you, do you remember when the Supreme Court decision came down saying that you could consider uncharged conduct in calculating under the guidelines? I do not, Your Honor. Do you remember the case name? Because that would be helpful on this issue. Unfortunately, I do not, Your Honor. I apologize. Okay. But again, with respect to the defendant's victimization of the casinos, the defendant had notice of that in the indictment. The defendant's own admissions in his guilty plea, he admitted that the intent of the scheme was to force the casinos to negotiate down his gambling losses. Included in the defendant's excerpts of record is a declaration of the defendant where he admits that he settled with the Hilton Casino for $800,000, which itself was $200,000 less than the $1 million bank check that was deposited with the casino and that the defendant fraudulently stopped payment on. So all of this goes towards the fact that the defendant knew that the casino was an identified victim in the indictment, and Lawton is inapplicable. In addition, with respect to the intended loss calculation, the district court analogized this case to a loan fraud case and used this court's decision in McCormick in arriving at that decision. And the reason really stemmed from the fact that the defense claim is that the indemnification clause that the defense had signed in order to obtain the was in some way evidence of his lack of intent to cause harm to the bank, that he was good for the money and he was somehow going to pay it back. The government takes a different view of the signing of the indemnification clause, that this was simply another step in furtherance of the fraud, because the defendant could not have obtained the replacement $1 million check without signing the indemnification agreement. And why is that? Because here what we had was the defendant gave the bank $1 million for a $1 million bank check. The defendant stopped payment on that and received a second $1 million check. So the bank had issued two $1 million bank checks. Under the Uniform Commercial Code, the bank was obligated on both of those checks, regardless of the stopped payment. The stopped payment was simply the bank agreeing to facilitate the defendant's request that the bank not honor its own promise to pay on both of those checks when they were negotiated. Now the bank honored the replacement check when the defendant deposited it. You're over your time, so. Thank you, Your Honor. Thank you. All right. The case of U.S. v. Boren will be submitted and will take
judges: Beezer, Hall, Wardlaw